IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BOBBIE JEAN KEEL )
)
v. ) No. 3:14-1329
) Judge Campbell/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable Todd J. Campbell, District Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 11), to which defendant has responded (Docket Entry No. 12). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 9),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her applications for benefits on January 18, 2011, alleging disability onset as of July 1, 2007. (Tr. 15) Her applications were denied at the initial and

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on December 14, 2012, when plaintiff appeared with counsel and gave testimony. (Tr. 32-54) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until February 1, 2013, when he issued a written decision finding plaintiff not disabled. (Tr. 15-24) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since July 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; radiculopathy; spondylosis; osteoarthritis of the right shoulder; and attention deficit disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and 5 pounds frequently; sit for 8 hours in an 8-hour workday; stand and/or walk for less than 2 hours in an 8-hour workday; occasional postural activities; never climb ladders, ropes, or scaffolds; avoid concentrated exposure to temperature extremes; able to understand detailed tasks and instructions; frequent contact with others.

6. The claimant is capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17-19, 23-24)

On April 19, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following summary of the evidence is taken from the ALJ's decision (Tr. 20-23):

> In terms of the claimant's alleged back problems, an August 2007 MRI of the lumbar spine revealed mild degenerative disc disease at L5-S1 with mild central protrusion and mild mass effect but no evidence of nerve root displacement. Ex. 17F. The claimant has been treated by pain management since May 2008 for low back pain, myalgia, and left hip pain. Ex. 2F, 8F, 13F. In May 2008, the claimant reported low back pain with radiation into the left lower extremity. Ex. 2F. A November 2011 MRI of the lumbar spine revealed minimal left and mild right foraminal stenosis at L5-Sl and minor degenerative changes at L3-4 and L4-5 without central canal, lateral recess, or foraminal stenosis. Ex. 13F.
>
> In July 2011, the claimant reported constant pain which was sharp and aching but which was relieved by medication. Ex. 8F. The claimant was treated at Summit Primary Care in December 2011. Ex. 12F. The claimant was diagnosed with chronic pain syndrome and back pain, but upon examination, she was noted to have a normal full range of motion of all joints and no reports of back pain. Ex. 12F.
>
> In January 2012, the claimant was treated at Antioch Pain Management where she reported back pain and left leg pain. She stated that medication allows her to work part time. Upon examination, she was noted to have a normal gait and stance. The cervical spine had a normal range of motion, and straight leg raise testing was negative bilaterally. Ex. 13F. In May 2012, the claimant reported doing well with good pain control on medication. Ex. 15F. October 2012 treatment

notes from Dr. Robert Cochran note that the claimant reported being able to clean her own house and do some babysitting. Ex. l5F.

Additionally, July 2011 treatment notes from the Pain Management Group note complaints of right arm pain, and the claimant was diagnosed with right shoulder osteoarthritis. Ex. 8F.

The claimant underwent a consultative physical examination in March 2011 which was conducted by examining physician Dr. Eric Swanson. Ex. 3F. The claimant reported problems including back pain and mental health problems. Upon examination, the claimant was noted to have a normal gait and station. She was able to get up out of a chair and onto/off of the examination table without difficulty. Mobility and grip strength were both noted to be normal. Additionally, range of motion testing was normal in both the cervical and dorsolumbar spine, with the exception of flexion in the dorsolumbar spine, which was only slightly reduced. Ex. 3F.

* * *

Regarding the claimant's mental health problems, treating physician Dr. Robert Cochran's treatment notes indicate that he treats the claimant for anxiety. Ex. 1F. The claimant has also received treatment from Dr. Chalko of Hermitage Psychiatric Group since 2010, where she was treated for reported symptoms of depression and anxiety. Ex. 9F, 14F. However, the undersigned notes that Dr. Chalko's treatment notes are largely illegible. Notably, the claimant declined individual therapy and was noted to be depressed secondary to circumstances. Ex. 9F. The claimant reported not having mood swings and able to complete tasks better after being placed on a medication regimen. Ex. 9F, 14F. December 2010 treatment notes document a diagnosis of ADD. Ex. 9F, 14F. Further, pain management treatment notes indicate that the claimant's mood and affect were normal in February 2011. Ex. 2F. To continue, December 2011 treatment notes from Summit Primary Care also note that the claimant had a normal mood and affect with normal attention span and concentration. Ex. 12F.

The claimant underwent a consultative psychological evaluation in April 2011 which was conducted by senior psychological examiner Bobbie L. Hand, M.S. Ex. 5F. The claimant reported problems including bipolar disorder, anxiety, and ADHD. When asked to describe her mental symptoms, the claimant responded, "Just...uh...not feeling good, no interest in anything, basically depression and no interest in anything. Sometimes I just feel like I exist." Ex. 5F. When asked to describe her symptoms of ADHD, the claimant reported that she was unable to sit still and interrupts people. However, Mr. Hand noted that the claimant was able to sit still in her seat throughout her examination and did not interrupt the examiner at any point. The claimant replied activities of daily living including straightening up the house, picking up, doing dishes, doing laundry, watching television, and preparing simple meals. She also reported enjoying walking. Ex. 5F. The claimant reported socializing with friends, saying that her friends visit her every two weeks. She also stated that she is able to drive herself and shop in stores. Upon examination, Mr. Hand noted that the claimant's presentation during the evaluation was inconsistent with her reported symptoms. The claimant did not exhibit any rapidly shifting moods and was noted to be polite and calm throughout the evaluation. Additionally, Mr. Hand

noted that the claimant "paused and stammered when simply asked to describe her symptoms as if not reporting them from actual experience but from her memory as if she learned them somewhere and was trying to remember what they were." Mr. Hand made no diagnoses of any mental conditions and assessed the claimant with a global assessment of functioning (GAF) score of 65. Ex. 5F.

The claimant testified that her mental health symptoms include difficulty concentrating. She stated that she is unable to concentrate unless she takes medication. However, in the consultative examination noted above, the claimant did not report taking any medication for ADD and was noted to exhibit no problems with concentrating. Ex. 5F. The claimant testified that physically, she has had leg pain for about 3 and a half years and back pain since 2007. She stated that she has worn a back brace once per day (30-40 minutes each time) for the last 4 years and that it helps relieve her pain. She stated that she is able to perform housecleaning and babysitting but that she is unable to sit for more than 30 minutes, stand for more than 40 minutes, or walk for more than 10 minutes. . . .

As for the opinion evidence, treating physician Dr. Robert Cochran opined in October 2012 that the claimant is unable to sit, stand, or walk for a full work day. Ex. 16F. . . .

Examining physician Dr. Erik Swanson noted that due to the brevity and scope of his evaluation, he was unable to make a determination of the claimant's physical functional capacity. Ex. 3F.

State agency evaluating physician Dr. Deborah Webster opined in April 2011 that the claimant's physical impairments were not severe. Ex. 4F. Likewise, state agency evaluating physician Dr. Carolyn Parrish affirmed the opinion of Dr. Webster in August 2011. Ex. 10F. . . .

\* \* \*

State agency evaluating psychiatrist Dr. Judy Martin opined in May 2011 that the claimant had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Ex. 6F. More specifically, Dr. Martin opined that the claimant is capable of understanding and remembering simple and detailed instructions of moderate complexity; capable of carrying out simple and moderately detailed instructions over the course of a normal workweek without special supervision but may have difficulty with highly complex instructions; capable of maintaining social functioning but may do best in a setting with limited public contact; and capable of being aware of hazards and adapting to changes. Ex. 7F. State agency evaluating psychologist Dr. Amin Azimi affirmed the opinion of Dr. Martin in September 2011. Ex. 11F. . . .

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental

impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability

7

determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff first argues that the ALJ erred by not giving proper weight to the opinion of plaintiff's treating physician, Dr. Cochran. The ALJ addressed the evidence from Dr. Cochran as follows:

> As for the opinion evidence, treating physician Dr. Robert Cochran opined in October 2012 that the claimant is unable to sit, stand, or walk for a full work day. Ex. 16F. However, Dr. Cochran's opinion is apparently based on a brief treatment history, as he treated the claimant six times before completing his opinion. Ex. 15F. Further, the treatment notes at Exhibits 13F and 15F do not support such a limited range of functioning; in fact, the claimant reported improved activity and functioning with medication. Ex. 15F. Therefore, Dr. Cochran's opinion is given little weight.

(Tr. 22) Plaintiff argues that the ALJ erroneously focused on the limited number of

visits she had with Dr. Cochran prior to the rendering of his October 2012 opinion, and failed to otherwise give good reasons for rejecting Dr. Cochran's opinion, when he should have given that opinion controlling weight because it was substantially supported by MRI findings. She further argues that the ALJ's determination of her RFC is improper because it includes abilities which are not assessed in any physician's opinion.

As the Sixth Circuit has explained, the opinions of a treating source such as Dr. Cochran are to be reviewed deferentially:

> The Commissioner has elected to impose certain standards on the treatment of medical source evidence. 20 C.F.R. § 404.1502. Under one such standard, commonly called the treating physician rule, the Commissioner has mandated that the ALJ "will" give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527[(c)]. If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527([c])(2)).
>
> Importantly, the Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion." 20 C.F.R. § 404.1527([c])(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him

9

disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ]he is not." Wilson, 378 F.3d at 544. Significantly, the requirement safeguards a reviewing court's time, as it "permits meaningful" and efficient "review of the ALJ's application of the [treating physician] rule." Id. at 544-45.

Cole v. Astrue, 661 F.3d 931, 937-38 (6th Cir. 2011).

In the case at bar, the ALJ did not make an explicit determination of whether Dr. Cochran's opinions were deserving of controlling weight, but plainly considered his assessment of an inability to sit, stand, and walk for a total of eight hours to be inconsistent with the MRI results of record, the treatment notes of both Dr. Cochran and the pain management doctors, and plaintiff's own reports of the relief her pain medications provided. The ALJ recounted the largely benign findings on plaintiff's lumbar spine MRIs,[2] normal results on range of motion, strength and mobility testing, and plaintiff's own reports of significant relief from her pain medications without side effects and her ability to engage in significant household chores and do some babysitting (Tr. 20-21), and nonetheless found plaintiff's RFC to include most of the exertional and nonexertional abilities assessed by Dr. Cochran, the most notable exception being Dr. Cochran's opinion that plaintiff's pain limited her to sitting for less than two hours during an eight-hour day. The ALJ found this assessed restriction to be unsupported by the treatment notes and other medical evidence, including Dr. Cochran's note in April 2012 that plaintiff is "doing well -

---

[2]The ALJ did make note of the November 2011 report of "minimal left and mild right foraminal stenosis at L5-S1" and other MRI evidence of minor degenerative changes in the lumbar spine (Tr. 20), and found that the April and August 2011 reports of the nonexamining state agency consultants were entitled to little weight because they were made without the benefit of these subsequent test results. (Tr. 23)

good pain control [with] addition of oxycodone 10 QID" (Tr. 21,[3] 419) In addition to reviewing the record for its support of, and consistency with, Dr. Cochran's 2012 assessment, the ALJ properly considered the number of office visits and brevity of his treatment relationship with plaintiff. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). While plaintiff argues that six office visits is an entirely sufficient foundation for Dr. Cochran's assessment of enduring limitations, this relative infrequency of visits is clearly not an improper consideration, and again, the ALJ did not entirely reject the assessment (far from it) or find that Dr. Cochran did not qualify as a treating source on that basis. Finally, with respect to plaintiff's contention that the ALJ is not qualified to vary from Dr. Cochran's assessment and establish plaintiff's ability to sit and otherwise function throughout the workday, it is clear that the ALJ did not insert an unqualified medical judgment in basing his RFC finding on the treatment notes from Dr. Cochran and the pain management specialists. Rather, as has been recognized by this court and in this circuit,

> [T]he ALJ has complete authority to make a RFC determination. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."). *See also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. Aug. 18, 2009); *Ford v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 194, 197 (6th Cir. Nov. 10, 2004). While an ALJ should not "substitute his opinion for that of a physician," he is also "not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe*, 342 Fed. Appx. at 157 (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). Further, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before

---

[3]The ALJ erroneously cited this report from Exhibit 15F as having been made in May, rather than April 2012.

rendering a residual capacity finding." *Poe*, 342 Fed. Appx. at 157 (citing *Ford*, 114 Fed. Appx. at 197).

Dickie v. Astrue, 2012 WL 3285624, at *13 (M.D. Tenn. July 20, 2012). In sum, the undersigned finds that the ALJ gave good reasons for declining to adopt all of the limitations assessed by Dr. Cochran, and that his finding of plaintiff's RFC is supported by substantial evidence.

Plaintiff next argues that the ALJ erred in failing to consider all of plaintiff's diagnosed impairments and to explain why certain of them were not found "severe" at step two of the sequential evaluation process. However, the regulations do not require that all diagnosed impairments be scrutinized for their severity. Indeed, even an erroneous finding of impairment nonseverity cannot amount to reversible error, so long as at least one severe impairment is identified and the sequential evaluation continues. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). Ultimately, a claimant's residual functional capacity is determined in view of the combined effects of *all* medically determinable impairments, severe and nonsevere alike. Accordingly, the fact that some of plaintiff's diagnosed impairments went unmentioned at the step two severity determination is "legally irrelevant." Anthony v. Astrue, 266 Fed. Appx. 451, 457 (6th Cir. Feb. 22, 2008) (citing Maziarz, supra).

As to plaintiff's contention that the ALJ's finding of severe right shoulder osteoarthritis and Attention Deficit Disorder (ADD) should have resulted in restrictions on plaintiff's RFC, it is noted that the ALJ adopted Dr. Cochran's assessment of a limited ability to lift or carry weight above five pounds, and he cited plaintiff's testimony that she

is unable to concentrate *unless she takes her ADD medication*[4] (although she reported to the consultative examiner that she did not take any ADD medication but nonetheless demonstrated no difficulty with concentrating). (Tr. 22) The ALJ further noted that plaintiff told the consultative examiner that her ADD resulted in an inability to sit still and a problem with interrupting people, but then proceeded to sit still throughout the examination and did not interrupt the examiner at any point. (Tr. 22, 330) The undersigned finds that plaintiff's ADD and right shoulder osteoarthritis were properly accounted for in the ALJ's finding of plaintiff's RFC. Lastly with respect to the RFC finding and the proof which supports it, plaintiff argues that the ALJ erred when, after giving great weight to the assessments of the nonexamining state agency psychological consultants, he failed to account for their agreement that plaintiff should have limited interaction with the public. However, the ALJ clearly did account for that limitation in his RFC finding, which allows for "frequent contact with others" (Tr. 19), rather than constant public contact. (See also Tr. 50) (ALJ instructs vocational expert to "consider that interaction with the public is limited, is really on a frequent basis"). The undersigned finds no error here.

        Finally, plaintiff argues that the ALJ erred in failing to include a function-by-function assessment in his RFC finding, as required by Social Security Ruling 96-8p. The Sixth Circuit has examined the requirement that a function-by-function assessment inform the RFC determination, finding as follows:

---

[4]In fact, plaintiff testified that her ADD medication, Adderall, effectively controlled her symptoms. (Tr. 42)

> In *Bencivengo [v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)]*,* the Third Circuit stated, "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing." *Bencivengo,* slip op. at 4. The Third Circuit distinguished between what an ALJ must consider and what an ALJ must discuss in a written opinion. The ALJ need not decide or discuss uncontested issues, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Bencivengo,* slip op. at 5.

Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002). Here, the ALJ articulated just how the record evidence supports the determination that plaintiff is limited to a range of sedentary work, but not so limited as her testimony or Dr. Cochran's October 2012 assessment indicated. Accordingly, the undersigned finds no error here.

### IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 4th day of September, 2015.

                                          s/ John S. Bryant
                                          JOHN S. BRYANT
                                          UNITED STATES MAGISTRATE JUDGE